IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ALFA CORPORATION, an Alabama corporation; | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CV NO. 2:06-962-WKW-WC<br>) |
| ALFA MORTGAGE CORPORATION, an Indiana corporation; | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Alfa Mortgage Corporation ("Defendant") moves this Court, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss Plaintiff Alfa Corporation's ("Plaintiff") Complaint due to lack of personal jurisdiction. In support thereof, Defendant shows as follows:

### INTRODUCTION

Plaintiff is a corporation allegedly organized under the laws of Delaware with its principal place of business in Montgomery, Alabama. Plaintiff's Complaint avers statutory and common law claims against Defendant related to Defendant's use of the name "Alfa." Plaintiff claims a trademark right to the name "Alfa" under common law and purportedly valid federally registered trademarks.

Defendant is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Defendant has no offices in Alabama. Defendant has never conducted business, by agent or otherwise, in Alabama. Defendant neither owns, leases, or rents any property in Alabama. Defendant is not required to be registered, licensed, or qualified to do business in Alabama. Defendant has never transacted business with any person or entity incorporated, connected with, or otherwise located in Alabama. In short, there are no contacts whatsoever that

01418228.1

warrant this Court's exercise of personal jurisdiction over Defendant. Accordingly, this Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction.

## STANDARD OF REVIEW

The plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant. *See Butler v. Beer Across America*, 83 F. Supp. 2d 1261, 1263 (N.D. Ala. 2000). "To survive a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff must demonstrate a prima facie case of personal jurisdiction, which *requires the presentation of evidence* sufficient to withstand a motion for a directed verdict." *Id.* (emphasis added). Where the parties' allegations conflict, the pleadings and evidence relating to jurisdictional facts are to be construed in the light most favorable to the plaintiff. *Id.*

## ARGUMENT

When a defendant challenges personal jurisdiction in Alabama, the plaintiff bears the twin burdens of establishing that (1) personal jurisdiction over the defendant comports with Alabama's long-arm statute; and (2) the requirements of due process are satisfied. *See Butler*, 83 F. Supp. 2d at 1266. Alabama's long-arm statute permits a court to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the United States and Alabama Constitutions. *Id.*; *see also* Ala. R. Civ. P. 4.2(b). Because Alabama's long-arm statute is coextensive with the Constitutional requirements of due process, the plaintiff can satisfy its two-pronged burden by showing that personal jurisdiction over the defendant meets the Constitutional requirements of due process. *See Butler*, 83. F. Supp. 2d at 1266.

To satisfy the Constitutional requirements of due process, the plaintiff must show that the defendant has certain **minimum contacts** with the forum state such that the exercise of jurisdiction does not offend traditional notions of *fair play and substantial justice*. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (emphasis added). "The nature and quality of

these [minimum] contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consolidated Development Corp. v. Sherritt*, 216 F.3d 1286, 1291 (11th Cir. 2000).

Specific jurisdiction arises out of a party's activities in the forum state that are related to the claims set forth in the complaint. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8-9 (1984). In contrast, general jurisdiction arises from a party's contacts with the forum state that are unrelated to the cause of action being litigated. *Consolidated Development*, 216 F.3d at 1292. In this case, Plaintiff cannot establish either specific or general jurisdiction because Defendant has no contacts whatsoever with the State of Alabama. Even if Plaintiff could show the requisite minimum contacts, this Court should still not exercise personal jurisdiction over Defendant because to do so would offend the traditional notions of fair play and substantial justice. Accordingly, this Court should dismiss this case for lack of personal jurisdiction.

### I. The Complaint should be dismissed for lack of personal jurisdiction because Plaintiff cannot establish the minimum contacts required for either specific or general jurisdiction.

#### A. Specific jurisdiction.

To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the forum state must satisfy three criteria: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum. *See SEC v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). In this case, it is undisputed that

- Plaintiff does not do business in Alabama. *See* Ex. A, Shelton Decl., ¶¶ 4-5, 10.

- Plaintiff is not required to be registered, licensed, or otherwise qualified to do business in the State of Alabama. *Id.* at ¶ 4.

- Plaintiff has never been required to file any type of tax return with respect to the State of Alabama. *Id.*

- Plaintiff has no employees located in Alabama. *Id.*

- Plaintiff has no officers or directors in Alabama. *Id.*

- Plaintiff does not maintain any offices in Alabama. *Id.*

- Plaintiff does not own any assets or maintain any bank accounts in Alabama. *Id.*

- Plaintiff does not own or lease personal or real property in Alabama. *Id.*

- Plaintiff does not have, and has never had, any customers in Alabama. *Id.* at ¶ 5.

- Plaintiff does not advertise its services in Alabama. *Id.*

- Plaintiff is not required to and does not maintain a registered agent in Alabama. *Id.* at ¶ 4.

- Plaintiff does not derive, directly or otherwise, any revenue from goods, services, or products consumed in Alabama. *Id.* at ¶ 5.

- Plaintiff does not solicit, sell, issue, or administer any mortgages in Alabama. *Id.*

- Prior to July 31, 2006, Plaintiff was unaware that any other business entity utilized the name "Alfa." *Id.* at ¶ 7.

- Prior to being served with this lawsuit, Plaintiff was unaware that another business entity utilizing the name "Alfa" was located in Alabama. *Id.* at ¶ 10.

- Plaintiff was unaware that any of its activities could potentially affect any citizen of Alabama. *Id.* at ¶¶ 7-10.

Defendant does not have, and has never had, any contact whatsoever with the State of Alabama. Accordingly, Defendant does not have the minimum contacts required to satisfy the three-part test set forth in *SEC v. Carillo*. *See SEC v. Carillo*, 115 F.3d at 1542. Consequently, this Court lacks specific personal jurisdiction over Defendant.

01418228.1

### 1. The *Calder* effects test.

Defendant notes that, with respect to intentional (as opposed to negligent) actions, the United States Supreme Court has held that intentional actions in one state may indicate that the defendant expected its conduct to have an effect in the forum state, and therefore expected to be sued in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). In *Calder v. Jones*, the plaintiff, an entertainer, sued an editor and a writer for libel based on a story printed in the National Enquirer. *Id.* at 785. The plaintiff lived and worked in California, and the defendants lived in Florida. *Id.* at 785-86. However, the libelous article focused on the plaintiff's activities in California, the plaintiff's career was specifically and detrimentally affected in California, and the National Enquirer's largest circulation was in California. *Id.* at 788-89. The Court found that specific personal jurisdiction was proper in California because the non-resident defendants intentionally directed their tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident. *Id.* at 790. Consequently, under the "*Calder* effects test," specific personal jurisdiction may be proper when (1) the defendant engages in intentional acts; (2) the acts are expressly aimed at the forum state; and (3) the acts cause an injury, the brunt of which is felt in the forum state. *Id.* at 790. In these circumstances, the minimum contacts requirement can be satisfied for purposes of specific jurisdiction.

Various jurisdictions have applied the *Calder* effects test to analyze personal jurisdiction related to claims for trademark infringement and dilution. In all of these cases, the courts relied on the ***intentionality*** aspect of the *Calder* test; in other words, the courts focused on whether the conduct was ***expressly aimed*** at causing harm in the forum state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (finding that defendant's acts did not give rise to personal jurisdiction under *Calder* because the acts were not "expressly aimed" at California); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397-401 (4th Cir.

2003) (referencing *Calder* and finding that personal jurisdiction over the defendant was improper because the defendant did not intend to specifically target citizens of the forum state); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n6 (3d Cir. 2003) (stating that the "intentionality requirement is the key missing component for jurisdiction under either the 'minimum contacts' analysis or the 'effects test'"); *Kwik-Kopy Corp. v. Byers*, 37 Fed. Appx. 90 (5th Cir. 2002) (finding sufficient personal jurisdiction under the effects test when the franchise agreement at issue was governed by Texas law, the immediate effect of the tortious interference would be felt in Texas, the defendant knew that the franchise agreement was governed by Texas law, and the harm caused by the defendant was "specifically directed" at a Texas corporation); *Finely v. North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998) (holding that personal jurisdiction was proper under *Calder* when the defendant's conduct was "intended to induce commercial activity within the forum state"); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club LP*, 34 F.3d 410, 412 (7th Cir. 1994) (finding that, for purposes of the *Calder* test, the defendant intentionally "entered" the state by broadcasting football games within the state of Indiana); *Alfa Corp. v. Alfagres, S.A.*, 385 F. Supp. 2d 1230, 1236 (M.D. Ala. 2005) (applying *Calder* and finding that personal jurisdiction existed because the facts alleged indicated "that Alfagres *knew* it was likely committing trademark infringement specifically against Alfa in Alabama and continued to do so anyway") (emphasis in original); *Full Sail, Inc. v. Spevack*, 2003 WL 25277185 at *6 (M.D. Fla. Oct. 21, 2003) (determining that the *Calder* test was not satisfied because the acts at issue did not "target[] the readers of the forum state" and was not "expressly aimed at a Florida audience").

In this case, it is undisputed that Defendant does not have, and has never had, any contacts with the State of Alabama. *See* Ex. A, Shelton Decl., ¶¶ 4-10. Further, it is undisputed that Defendant has not expressly aimed any of its conduct at any entity located within the State

of Alabama. *Id.* Moreover, the Complaint itself contains no allegation that Defendant expressly or intentionally aimed any of its conduct at any Alabama entity. Under *Calder*, this Court lacks personal jurisdiction over Defendant because (1) Defendant has no contacts with the State of Alabama; (2) Defendant has never intentionally or expressly aimed any act at the State of Alabama, or at any entity operating within the State of Alabama; and (3) there is no indication that the brunt of Plaintiff's alleged injury was felt in Alabama.

Moreover, the Complaint makes the broad allegation that "Defendant's activities have caused and will continue to cause irreparable harm to Alfa Corp. and to the substantial goodwill embodied in Alfa Corp.'s 'Alfa' trademarks, and such acts will continue unless restrained by this Court." Compl., ¶ 24. The Complaint does not indicate where or how Plaintiff was harmed by Defendant's alleged unlawful conduct. Even assuming that Plaintiff properly alleged that it experienced lost sales at its Alabama headquarters, this allegation, by itself, does not satisfy *Calder*. If Plaintiff's allegation was sufficient to establish personal jurisdiction, it would mean that jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state, since the plaintiff always "feels" the impact of the tort there. *See IMO Industries, Inc. v. Kiekert*, 155 F.3d 254, 263 (3d Cir. 1998) *citing ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997) (finding that lost sales felt at a company's headquarters, when unaccompanied by other contacts, was "too unfocused to justify personal jurisdiction").

Based on the foregoing, this Court should grant Defendant's Motion to Dismiss for lack of specific personal jurisdiction.

### B. General jurisdiction.

General jurisdiction may exist when a defendant has "sufficiently numerous, purposeful, and continuous" contacts with the forum state such that assertion of judicial power over the defendant is deemed fair. *See Butler v. Beer Across America*, 83 F. Supp. 2d 1261, 1264 (N.D.

Ala. 2000). General jurisdiction arises from contacts that are unrelated to the cause of action being litigated, and "absolutely no connection need be shown between the state and the claim for the defendant to be summoned constitutionally before the forum's courts." *Id.* "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development v. Sherritt*, 216 F.3d 1286, 1292 (11th Cir. 2000).

This Court lacks general personal jurisdiction over Defendant because the minimum contacts prerequisite for general jurisdiction cannot be satisfied. As stated previously in this Memorandum, Defendant has no contacts, and has never had any contacts, with the State of Alabama. *See* Ex. A, Shelton Decl., ¶¶ 4-10. Consequently, the Complaint should be dismissed for lack of general personal jurisdiction.

### II. The Complaint should be dismissed for lack of personal jurisdiction because to exercise personal jurisdiction over Defendant in this case would offend the traditional notions of fair play and substantial justice.

Even if the court finds that Defendant has the minimum contacts necessary to support personal jurisdiction, the Complaint should still be dismissed because to exercise personal jurisdiction over Defendant would offend the notions of fair play and substantial justice. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). To determine whether the exercise of jurisdiction comports with fair play and substantial justice, the court considers (1) the burden on the defendant; (2) the forum state's interest in overseeing the litigation; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interests in efficiently resolving the controversy; and (5) the joint interests of the states in promoting basic social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1985).

Plaintiff purports to be a publicly traded company that "is a financial services conglomerate, operating through a number of wholly owned subsidiaries, divisions, and related companies." *See* Compl., ¶¶ 8-9. The Complaint alleges that Plaintiff is listed on the NASDAQ and deals in insurance, financial services, commercial leasing, benefits services, and realty and building services. *Id.* at ¶¶ 9-13. Plaintiff avers to have generated "billions of dollars in sales." *Id.* at ¶ 18. The Complaint further claims that Plaintiff operates in at least twenty-four states. *Id.* at ¶ 11.

By contrast, Defendant is a privately-held company currently consisting of a single employee. *See* Ex. A, Shelton Decl., ¶ 3. Defendant has conducted business in only two states – Indiana and Oregon. *Id.* at ¶ 2. In its most profitable year, Defendant generated approximately $150,000 in profits. *Id.* at ¶ 3. For this Court to exercise personal jurisdiction over Defendant would offend the traditional notions of fair play and substantial justice because of the overwhelming burden Defendant would bear in litigating this action in the State of Alabama - particularly in light of the distance between Alabama and the Defendant's places of business, the financial cost of litigating this action in Alabama as opposed to Defendant's home states, and the fact that Defendant has no contacts with Alabama. Defendant recognizes that Alabama and the interstate judicial system have an interest in efficiently resolving this dispute, but contends that Indiana and Oregon have, at a minimum, an equal interest in resolving this dispute in their forum's courts. Moreover, Plaintiff will be able to obtain the same convenient and effective relief in Indiana or Oregon as it would in Alabama.

Litigating this action in Alabama would offend the traditional notions of fair play and substantial justice because of (1) the overwhelming disparity in resources between Plaintiff and Defendant, (2) Defendant's lack of contacts with the State of Alabama, and (3) the hardship that would be inflicted on Defendant. Consequently, this Court should determine that it does not

have personal jurisdiction over Defendant in this case and should grant Defendant's Motion to Dismiss.

### III. *Alfa Corp. v. Alfagres* is not controlling authority because it is factually distinguishable from this case.

Defendant anticipates that Plaintiff will rely on *Alfa Corp. v. Alfagres Corp.*, 385 F. Supp. 2d 1230 (M.D. Ala. 2005) to support an argument in favor of personal jurisdiction. The plaintiff in that case is the same Plaintiff in this lawsuit, and the United States District Court for the Middle District of Alabama recently denied the *Alfagres* defendant's motion to dismiss for lack of personal jurisdiction. *Id.* at 1232. This Court should not, however, rely on *Alfagres* because that case is factually distinguishable from the case at bar.

Alfagres, S.A., is a Colombian tile manufacturer that markets and sells its products worldwide, including the United States. *Id.* Alfagres maintained a website and various product brochures that listed a Miami, Florida address as a business office. *Id.*

Alfa Corp. alleged that Alfagres' use of the name "Alfa" was confusing to customers and detrimental to its business. *Id.* When Alfagres attempted to register the name with the United States Patent and Trademark Office, Alfa Corp. sent Alfagres a cease and desist letter, demanding that Alfagres withdraw its trademark application. *Id.* at 1234. Nonetheless, Alfagres continued to use the "Alfa" designation, even after the Patent and Trademark Office denied Alfagres' trademark applications based on Alfa's Corp.'s senior registered trademarks. *Id.* After Alfa Corp. filed suit for trademark infringement, Alfagres moved to dismiss, in part, for lack of personal jurisdiction. *Id.*

The court denied Alfagres' motion to dismiss for lack of personal jurisdiction. *Id.* at 1237. Relying on *Calder*, the court determined that Alfagres displayed the minimum contacts necessary to establish specific personal jurisdiction. *Id.* at 1236. The court specifically relied on the allegations that (1) Alfa demanded that Alfagres withdraw its trademark applications with the

- 10 -

01418228.1

Patent and Trademark Office and cease using the name "Alfa"; and (2) Alfagres' trademark application was rejected due to Alfa's senior registered trademark. *Id.* The court found that the allegations indicated that

> Alfagres ***knew*** it was likely committing trademark infringement specifically against Alfa ***in Alabama*** and continued to do so anyway. Because it could anticipate that the primary effects of its wrongful conduct would be felt in Alabama, Alfagres could reasonably have expected that Alfa would bring suit here, even given Alfagres' lack of other contacts with Alabama.

*Id.* (emphasis added).

In contrast, there are no facts or allegations here to show that Defendant committed trademark infringement in Alabama or, more importantly, that it ***knew*** it was committing trademark infringement in Alabama. Further, all of the cases relied upon by the *Alfagres* Court emphasize the *Calder* test's intentionality requirement – that the defendant in question expressly aimed its conduct at the forum state. *See Bankcroft & Masters, Inc. v. August Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (stating that the defendant "acted intentionally" when it sent a cease and desist letter to the plaintiff - a California corporation doing business almost exclusively in California - that activated a published dispute-resolution policy in California); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994) (finding that the defendant not only injured the plaintiff in the forum state, but also "entered" the forum state by broadcasting football games there); *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991 (holding that the Defendant must reasonably anticipate being haled into court when its actions were "uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there"); *Panavision Int'l, LP v. Toppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (stating that the "effects test" was satisfied when the defendant knowingly engaged in a scheme to extort money from the plaintiff in the forum state). In this case, however, there are no facts or

allegations to indicate that Defendant intentionally or expressly aimed any conduct at any entity located in the State of Alabama.

The mere fact that Defendant received a cease and desist letter from Plaintiff is not enough to establish personal jurisdiction in Alabama. *See, e.g., Yahoo Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006); *Red Wing Shoe Co. v. Hockerson-Halberstadt*, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998). To find otherwise would enable any plaintiff to establish personal jurisdiction over an unwitting defendant by merely sending them a letter. Additionally, Plaintiff's letter to Defendant (1) was printed on a letterhead with a California address; and (2) did not mention the State of Alabama anywhere. *See* Compl., Ex. 1, letter from Juan C. Baslombrio to Corina Shelton dated August 22, 2006. Consequently, even though Defendant received a letter accusing it of trademark infringement, it still had no indication that its allegedly unlawful conduct might affect any person or entity within the State of Alabama.

## CONCLUSION

Plaintiff cannot meet its burden of establishing a *prima facie* case of personal jurisdiction because there is no allegation in the Complaint and no evidence in the record to show that Defendant had any contact whatsoever with the State of Alabama. Moreover, there is no allegation or evidence showing that Defendant intentionally or expressly aimed any act toward any entity connected with the State of Alabama. Consequently, this Court should dismiss this suit for lack of personal jurisdiction.

01418228.1

                                        Respectfully submitted by,

                                        /s/ Bryan A. Coleman
                                        Brannon J. Buck (BUC019)
                                        Bryan A. Coleman (COL131)
                                        Attorneys for Defendant ALFA
                                        MORTGAGE CORPORATION

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## CERTIFICATE OF SERVICE

      I hereby certify that on December 5, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Robert A. Huffaker
Rushton, Stakely, Johnston & Garrett
184 Commerce St.
Montgomery, AL 36104

Juan C. Baslombrio
Dorsey and Whitney LLP
38 Technology Dr.
Irvine, CA 92618

                                        /s/ Bryan A. Coleman
                                        OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

MIDDLE DIVISION

| | |
|---|---|
| ALFA CORPORATION, an Alabama corporation;<br><br>Plaintiff,<br><br>v.<br><br>ALFA MORTGAGE CORPORATION, an Indiana corporation;<br><br>Defendant. | CIVIL ACTION NO.<br>06-962-WKW |

### DECLARATION OF CORINA SHELTON

I, Corina Shelton, pursuant to 28 U.S.C. § 1746, make the following declaration:

1. My name is Corina Shelton. I am a resident of Oakland, California. I am over the age of twenty-one years and make this affidavit based upon my personal knowledge.

2. I am the owner, president, and sole employee of Alfa Mortgage Corporation ("Alfa Mortgage"), a mortgage financing company. I have been the owner and president of this company since its inception. Alfa Mortgage was incorporated in the State of Indiana in March 2001, and has been conducting business in Indiana continuously since that time. Alfa Mortgage registered to do business in the State of Oregon in May 2002, and has been conducting business in Oregon continuously since that time. Recently, Alfa Mortgage registered to do business in California, but has not conducted any business in California.

3. Alfa Mortgage is a small, privately-held corporation. From time to time, Alfa Mortgage has employed up to seven employees. However, at the present time, I am the sole employee. Annual revenues for Alfa Mortgage range between $71,000 and $400,000. After expenses, annual profits range from $35,000 to $150,000.

01419748.1

4. Alfa Mortgage does not do business in the State of Alabama, and is not required to be registered, licensed, or otherwise qualified to do business in Alabama. Alfa Mortgage has never been required to file any type of tax return in Alabama. Alfa Mortgage has no employees, officers, or directors in Alabama. Alfa Mortgage does not maintain any offices, assets, bank accounts, personal property, or real property in Alabama. Alfa Mortgage is not required to, and does not, maintain a registered agent in Alabama.

5. Alfa Mortgage does not have, and has never had, any customers in Alabama. Alfa Mortgage does not advertise in Alabama, and does not derive, directly or otherwise, any revenue from mortgages, services, or products in Alabama. Alfa Mortgage does not solicit, enter into, or service any mortgages in Alabama.

6. I chose the name "Alfa" for this company for several personal reasons. First, the word "alpha" symbolizes a "beginning," which was appropriate for the formation of a new company. Second, I am Romanian, and the word "alpha" is spelled "alfa" in my native language. Finally, I wanted my company's name to begin with the letter "A."

7. On July 31, 2006, I was deposed as a witness in a lawsuit to which I was not a party. That lawsuit involved Alfa Corporation and another business using the "Alfa" name. Until that time, I was unaware of the existence of Alfa Corporation.

8. At the July 31, 2006 deposition, I was approached by an attorney for Alfa Corporation. He mentioned that my use of the name "Alfa Mortgage" might violate Alfa Corporation's trademark. He did not inform me that Alfa Corporation was in any way connected with the State of Alabama. Further, he did not elaborate on Alfa Corporation's trademark rights in Indiana or Oregon.

9. On August 22, 2006, I received a letter from Juan C. Baslombrio, an attorney for Alfa Corporation. A true and correct copy of this letter is attached to this Affidavit. *See* Att. 1,

- 2 -

01419748.1

Letter from Juan Baslombrio to Corina Shelton dated August 22, 2006. This letter stated that Alfa Corporation believed that my company's use of the name "Alfa Mortgage" violated its trademark rights. The letter also demanded that I stop using the name "Alfa Mortgage" for my business. The letter did not indicate in any way that Alfa Corporation was connected to the State of Alabama.

10. On October 27, 2006, I was served with a Summons and a copy of the Complaint that forms the basis of this lawsuit. This date is the first instance in which I became aware that Alfa Corporation was connected with the State of Alabama. This lawsuit is the only contact I have ever had with the State of Alabama. This lawsuit is the only contact that Alfa Mortgage has ever had with the State of Alabama.

11. Further, the declarant sayeth not.

I, Corina Shelton declare under penalty of perjury that the foregoing is true and correct. Executed on December 4, 2006.

_____
CORINA SHELTON

# EXHIBIT A
# Attachment 1

# DORSEY
DORSEY & WHITNEY LLP

JUAN C. BASOMBRIO
(949) 932-3650
FAX (949) 932-3601
basombrio.juan@dorsey.com

August 22, 2006



**By Fax and U.S. Mail**

Corina Shelton
President/Broker
Alfa Mortgage, Inc.
8888 Keystone Crossing, Suite 1300
Indianapolis, Indiana 46240

Dear Ms. Shelton:

As you know, I represent Alfa Corporation ("Alfa Corp.") and its related companies. Alfa Corp. is a financial services conglomerate. I was the lawyer that represented Alfa Corp. during your recent deposition in San Francisco.

Alfa Corp. is the registrant of the "ALFA CORPORATION" federal trademark, and of various other trademarks and pending trademark applications including the "Alfa" designation (such as Alfa Realty, Alfa Financial, Alfa Insurance, and others) in the financial services classes, with the United States Patent & Trademark Office. Mortgage lending is among the various financial services offered by Alfa Corp. and its related companies.

Accordingly, we believe that your company's use of the name "Alfa Mortgage, Inc." infringes upon the federal and common law rights of Alfa Corp. Alfa Corp. demands that you stop using the name Alfa Mortgage or any other name using "Alfa." Please contact me at your earliest convenience to discuss this matter. My client is willing to provide you with sufficient time to transition your company to using another name.

Very truly yours,

Juan C. Basombrio