IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALFA CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-cv-00962-WKW |
| ) | [wo] |
| ALFA MORTGAGE INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alfa Corporation brings this suit against Defendant Alfa Mortage Incorporated ("Alfa Mortgage") for trademark infringement and unfair competition in violation of state common law and the United States Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. §§ 1051-1127, and for trademark dilution in violation of § 8-2-17 of the Alabama Code.  This case is before the court on Alfa Mortgage's Motion to Dismiss (Doc. # 10) pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  For the reasons given below, the motion is due to be DENIED.

### I. STANDARD OF REVIEW

Upon consideration of the evidentiary submissions of the parties, the court has determined in its discretion that an evidentiary hearing is not necessary.  *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over a non-resident defendant.  *Id.*  The court must accept all facts alleged in the complaint as true, and where facts are contested the court is to draw all reasonable inferences in favor of the plaintiff.  *Id.*  Where the defendant submits affidavits or other competent evidence supporting a meritorious challenge to jurisdiction, the burden falls on the plaintiff to produce sufficient evidence to establish jurisdiction.  *See Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110,

1112 (11th Cir. 1990). The plaintiff carries its burden "if the plaintiff presents enough evidence to withstand a motion for a directed verdict." *Madara*, 916 F.2d at 1514.

## II. JURISDICTIONAL FACTS

In support of its motion to dismiss, Alfa Mortgage submitted the Declaration of Corina Shelton ("Shelton"), owner and president of Alfa Mortgage, a copy of the August 26, 2006 correspondence from Juan C. Basombrio ("Basombrio"), one of Alfa Corporation's attorneys, to Shelton, and a transcript of testimony from Shelton's deposition, which was taken by Basombrio in a case pending in the Southern District of New York. In addition to its Complaint, Alfa Corporation submitted Basombrio's Declaration and copies of excerpts from Alfa Mortgage's website (www.alfamtg.com) and copies of excerpts from a search conducted on the website of the United States Patent and Trademark Office. In comparing the allegations of the complaint and Alfa Corporation's submission with Alfa Mortgage's submission, the court notes that the only conflict is related to the substance of a conversation between Shelton and Basombrio after Shelton's deposition in the unrelated case. The court construes all reasonable inferences in favor of the plaintiff in detailing the relevant facts.

According to its complaint, Alfa Corporation is incorporated under Delaware law and maintains its principal place of business in Montgomery, Alabama. (Compl. ¶ 1.) It is a financial services conglomerate operating through a number of wholly owned subsidiaries, divisions, and related companies. (*Id*. ¶ 8.) It is publicly traded and listed on the NASDAQ as "ALFA." (*Id*. ¶ 9.) Alfa Corporation and its related companies provide insurance and reinsurance services, is a thrift holding company that owns stock in a financial services company, and provides a variety of other financial services, including offering equity lines of credit on residential real estate and other

mortgage services, as well as commercial leasing services, benefits services, and realty and building services. (*Id.* ¶¶ 10-13.)  Alfa Corporation is continuing to expand into diversified insurance, banking, mortgage, securities and other financial services. (*Id.* ¶ 14.)  By doing business for many years under the name "ALFA," Alfa Corporation alleges that it has acquired common law trademark rights in Alabama and throughout the United States. (*Id.* ¶ 15.)  Alfa Corporation also holds federally registered trademarks incorporating the word "ALFA" and has a number of pending trademark applications. (*Id.* ¶¶ 16-17.)  It further alleges that its use of the "ALFA" trademarks began before Alfa Mortgage commenced use of the "ALFA" name. (*Id.* ¶ 16.)

Alfa Mortgage is incorporated under Indiana law, maintains its principal place of business in Indiana, and "does business and/or is licensed currently in Indiana, Illinois, Minnesota and Oregon, and is attempting to register in California." (*Id.* ¶¶ 5-6.)  It is undisputed that Alfa Mortgage has no office and no property and has never conducted business in Alabama.  However, it is alleged that Alfa Mortgage owns and operates an interactive website (*i.e.*, www.alfamtg.com), which states that Alfa Mortgage offers commercial, residential, and construction mortgages and loans and related services and contains a link for online applications. (*Id.* ¶ 20; Basombrio Decl. at Ex. 1.)

On July 31, 2006, Basombrio, during the course of his representation of Alfa Corporation in a different trademark infringement lawsuit pending in the Southern District of New York,[1] deposed Shelton regarding Alfa Mortgage. (Shelton Dep.)  Shelton avers that she "was unaware of the existence of Alfa Corporation" prior to this deposition. (Shelton Decl. ¶ 7.)  Believing that Alfa Mortgage's use of the name "ALFA" in connection with mortgage, loan, construction, and financial services constitutes trademark infringement and dilution and unfair competition, Basombrio

---

[1] *Alfa Corp. v. OAO Alfa Bank, et al.*, No. 04-cv-8968.

"indicated to Ms. Shelton that [his] client, Alfa Corporation, was a corporation in Alabama, was the owner of various federally registered trademarks under the name ALFA, and objected to the use by Alfa Mortgage of the name ALFA" and that he would be in contact with her. (Basombrio Decl. ¶ 3.) Shelton declares that Basombrio "mentioned that my use of the name 'Alfa Mortgage' might violate Alfa Corporation's trademark. He did not inform me that Alfa Corporation was in any way connected with the State of Alabama. Further, he did not elaborate on Alfa Corporation's trademark rights in Indiana or Oregon." (Shelton Decl. ¶ 8.)

On August 22, 2006, Basombrio, on behalf of Alfa Corporation, sent to Shelton at Alfa Mortgage a cease and desist letter:

> Accordingly, we believe that your company's use of the name "Alfa Mortgage, Inc." infringes upon the federal and common law rights of Alfa Corp. Alfa Corp. demands that you stop using the name Alfa Mortgage or any other name using "Alfa." Please contact me at your earliest convenience to discuss this matter. My client is willing to provide you with sufficient time to transition your company to using another name.

(Basombrio Decl. ¶ 3; Compl. Ex. 1.) Shelton notes that Basombrio's "letter did not indicate in any way that Alfa Corporation was connected to the State of Alabama." (Shelton Decl.¶ 9.) Alfa Mortgage did not respond to Basombrio's letter. (Basombrio Decl. ¶ 3.)

Approximately three months later, Alfa Corporation filed this lawsuit alleging jurisdiction over Alfa Mortgage "by virtue of its commission of the wrongful and tortious conduct as described herein within and without the State of Alabama." (Compl. ¶ 3.)

### III. DISCUSSION

Alfa Corporation has the burden of establishing that the exercise of jurisdiction over Alfa Mortgage comports with both Alabama's long-arm provision and the requirements of the Due Process Clause of the Fourteenth Amendment. *Madara*, 916 F.2d at 1514. Because Alabama's

long-arm provision, Rule 4.2(a) of the Alabama Rules of Civil Procedure, is co-extensive with due process requirements, *see Ala. Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983), the court need only consider whether the exercise of jurisdiction satisfies the requirements of due process. *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992). Due process requires that Alfa Mortgage have certain minimum contacts with Alabama such that the exercise of jurisdiction over Alfa Mortgage does not offend traditional notions of fair play and substantial justice. *Burnham v. Super. Ct. of Cal., County of Marin*, 495 U.S. 604, 618 (1990) (citing *Int'l Shoe v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Alfa Mortgage asserts that it "has no contacts with the State of Alabama" and "has never intentionally or expressly aimed any act at the State of Alabama" and argues that, even if the court found sufficient minimum contacts, exercising personal jurisdiction over Alfa Mortgage in this case would offend traditional notions of fair play and substantial justice. (Def.'s Br. at 7-8.) Alfa Corporation argues that Alfa Mortgage is subject to personal jurisdiction under the *Calder*[2] effects test, *i.e.*, personal jurisdiction exists where the effects of the defendant's infringement are most strongly felt. Thus, Alfa Corporation reasons, Alfa Mortgage had sufficient minimum contacts with Alabama and the court's exercise of jurisdiction over it does not offend due process.

*A.    Minimum Contacts*

Specific jurisdiction may be exercised over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8-9 (1984). In contrast, general jurisdiction may arise from a party's contacts with the forum state that are unrelated to the litigation. *Id.*; *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216

---

[2] *Calder v. Jones*, 465 U.S. 783, 790 (1984).

F.3d 1286, 1292 (11th Cir. 2000).[3]  To constitute minimum contacts for purposes of specific jurisdiction, Alfa Mortgage's contacts with Alabama must satisfy three criteria: (1) the contacts must be related to or have given rise to Alfa Corporations's cause of action; (2) Alfa Mortgage purposefully directed its activities at residents of Alabama; and (3) Alfa Mortgage's conduct and connections with Alabama are such that it should reasonably anticipate being haled into court in Alabama.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985); *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

Alfa Mortgage claims that it "does not have, and has never had, any contact whatsoever with the State of Alabama," and thus cannot be found to "have the minimum contacts required to satisfy the three-part test set forth in *SEC v. Carillo*." (Def.'s Br. at 4.)  This argument, however, ignores the plaintiff's allegations that Alfa Mortgage continued its use of the Alfa name even after Alfa Corporation demanded that it cease and desist and that this alleged trademark infringement caused injury in Alabama.  The injury from a trademark infringement occurs in the state where the trademark owner resides.  *See, e.g., Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) ("[B]ecause a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, the injury occurs both in places where the plaintiff does business and in the state where its primary office is located."); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n. 2 (9th Cir.1998) ("[T]he brunt of the harm suffered by Panavision was in the state where it maintained its principal place of business."); *Nida v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) ("Injury from trademark infringement occurs in the state where the trademark owner resides.").  Where, as

---

[3] Because Alfa Mortgage does not have continuous and systematic general business contacts with Alabama, this court does not have general jurisdiction over Alfa Mortgage.

here, a cause of action arises from an alleged trademark infringement causing tortious injury in Alabama where the trademark owner resides, the criteria of "relatedness" is met. *See Burger King Corp.*, 471 U.S. at 472-73.

Alfa Corporation argues that the purposeful direction criterion is satisfied under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984).[4] In *Calder*, Florida residents wrote and edited a libelous article about a California entertainer that was published in a national magazine. The Supreme Court in *Calder* held that the effects felt in California from the Florida defendants' intentional tortious conduct were sufficient for the California courts to exercise jurisdiction over the defendants. *Id.* at 788-89. The Court reasoned that the defendants knew that the effects of the tort--the "brunt of that injury"--would be most strongly felt by the plaintiff in California, the state where she lived and worked. *Id.* at 789-90.

*Calder* has been applied in trademark infringement cases. *See, e.g., Panavision Int'l, L.P.*, 141 F.3d 1316; *Indianapolis Colts, Inc. v. Metro. Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384 (8th Cir.1991); *Alfa Corp. v. Alfagres, S. A.*, 385 F. Supp. 2d 1230 (M.D. Ala. 2005) (Thompson, J.). In the instant case, the *Calder* effects test requires a showing that Alfa Mortgage committed an intentional act, which was expressly aimed at Alabama, and that the "brunt of [the] injury" was felt in Alabama. *See Calder,* 465 U.S. at 789-90.

Alfa Mortgage argues that the courts that have applied *Calder* focus on the intentionality aspect of the effects test. (Def.'s Reply Br. at 2-4.) Alfa Mortgage asserts that "[Shelton] was never

---

[4] Alfa Corporation also asserts that Alfa Mortgage purposefully directed activity to Alabama through its interactive website. The court need not decide whether the interactive website constitutes sufficient minimum contacts because the court finds it has personal jurisdiction over Alfa Mortgage based on the *Calder* effects test.

informed that Alfa Corporation was connected with the State of Alabama" during her deposition or by Basombrio's letter. Therefore, Alfa Mortgage reasons, no conduct could ever have been aimed expressly at Alabama. Alfa Corporation counters that even if its residency in Alabama was not known, Alfa Mortgage should have known and could have known by conducting simple research.

Although the parties' dispute raises an interesting question, *i.e.*, whether Alfa Mortgage is charged with knowledge of Alfa Corporation's residency or has some affirmative duty to determine the residency of a trademark owner, the court saves resolution of that issue for another day. Contrary to Alfa Mortgage's assertion that "the record shows that [it] never expressly aimed any conduct at the State of Alabama," the court finds otherwise. Basombrio averred that he informed Shelton after the deposition that his client is a corporation in Alabama[5] that objected to Alfa Mortgage's use of the name "ALFA." Basombrio followed up that conversation with a cease and desist letter to Shelton. The record shows that Alfa Mortgage continued to use the "ALFA" name knowing that it was likely committing trademark infringement specifically against Alfa Corporation, a corporation in Alabama, and that such infringement would cause injury to Alfa Corporation in the state where its principal place of business is located. Alfa Mortgage's intentional tortious wrongdoing is "purposeful direction" within the meaning of the minimum contacts analysis. *See Burger King Corp.*, 471 U.S. at 472-76.

Furthermore, Alfa Mortgage engaged in conduct such that Alfa Mortgage could reasonably anticipate being haled into court in Alabama, the state where the effects of the infringement are most strongly felt. *See Burger King Corp.*, 471 U.S. at 474-76; *Calder*, 465 U.S. at 789-90 (citing *World-*

---

[5] Shelton denied that Basombrio told her Alfa Corporation was headquartered in Alabama. Nevertheless, the court must resolve all factual disputes in favor of the plaintiff.

*Wide Volkswagen Corp. Woodson*, 444 U.S. 286, 297-98 (1980)); *Alfagres*, 385 F. Supp. 2d at 1236. Accordingly, the court finds that the criteria necessary for minimum contacts are satisfied.

B.     *Fair Play and Substantial Justice*

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477. In evaluating whether the exercise of jurisdiction comports with due process, the court must consider the burden on Alfa Mortgage, Alabama's interest in adjudicating the dispute, Alfa Corporation's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and states' shared interests in furthering fundamental substantive social policies. *See id.*

Alfa Mortgage argues that the exercise of jurisdiction over it would offend due process "because of (1) the overwhelming disparity in resources between Plaintiff and Defendant, (2) Defendant's lack of contacts with the State of Alabama, and (3) the hardship that would be inflicted on Defendant." (Def.'s Br. at 9.) Alfa Mortgage suggests that the a court in Indiana or Oregon would be a proper forum.

This argument is unconvincing. There does appear to be a huge disparity in the parties' resources; however, the costs of this litigation will not be significantly lessened, if at all, by trying the case in a forum other than Alabama. The hardship that Alfa Mortgage faces is due strictly to defending a lawsuit against a larger, more financially powerful litigant, not because the lawsuit is in an Alabama court. Moreover, Indiana or Oregon is no more convenient a forum than Alabama. After all, Shelton, allegedly the "sole employee of Alfa Mortgage," is a resident of California.

(Shelton Decl. ¶¶ 1-2.) Such burden is felt by any out-of-state defendant. *See generally Nida Corp.*, 118 F. Supp. 2d at 1232-33. In light of the finding that there is no undue burden on Alfa Mortgage, the due process factors weigh in favor of the court's exercise of jurisdiction over Alfa Mortgage.

### IV.  CONCLUSION

For the reasons set forth above, it is ORDERED that the Motion to Dismiss (Doc. # 10) is DENIED. The defendants shall file an answer **on or before October 2, 2007.**

DONE this 18th day of September, 2007.

                                     /s/  W. Keith Watkins  
                                     UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

# CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).