THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALFA CORPORATION, an Alabama )
corporation, )
)
Plaintiff, )
)
v. )    CIVIL ACTION NO. 2:06cv962-WKW
)
ALFA MORTGAGE INC., an Indiana )
corporation, )
)
Defendant. )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court is Plaintiff's "Motion for Entry of Default Judgment"
(Doc. #36). The undersigned gave Defendant Alfa Mortgage Inc. (Defendant) an
opportunity to respond to the motion, but Defendant did not do so. Order of April 10,
2008 (Doc. #39). Upon consideration of the motion and Plaintiff's Memorandum in
Support of the Motion, and for the reasons that follow, the Magistrate Judge
RECOMMENDS the motion (Doc. #36) be GRANTED IN PART and DENIED IN
PART without the necessity of a hearing.

## I.    BACKGROUND

Prior to commencing this lawsuit, Plaintiff, Alfa Corporation (Plaintiff), sent a
cease and desist letter to Defendant. Compl. (Doc. #1) at ¶ 23; Def.'s Exh. 1 (Doc. #37-
2). Plaintiff also verbally advised Defendant about Plaintiff's ALFA trademarks. Compl.
(Doc. #1) at ¶ 23. Because Defendant continued to use the ALFA name, Plaintiff

commenced this action on October 25, 2006, alleging violations of the Lanham Act, 15

U.S.C. §§ 1114(1), 1125(a)(1)(A), as well as supplemental state law claims.  Compl.

(Doc. #1) at ¶¶ 1, 23.  Plaintiff properly served Defendant with a Summons and a copy of

the Complaint (Doc. #6).  Defendant initially filed an unsuccessful Motion to Dismiss,

and later, after counsel withdrew, informed the Court it would not participate in this

litigation.  Mot. to Dismiss (Doc. #10); Order of October 2, 2007, (Doc. #20);[1] Doc. #30

at 1 (stating Defendant is withdrawing from this case).  Despite three extensions of time,

Defendant did not file an Answer or participate any further in the suit.  Plaintiff then

obtained an entry of default from the Clerk of this Court pursuant to Rule 55(a) of the

Federal Rules of Civil Procedure.  Entry of Default (Doc. #33).  Plaintiff now seeks a

default judgment (Doc. #36) against Defendant; a permanent injunction; an order

directing Defendant to deliver to Plaintiff for destruction all items which "bear any

designation in violation of Plaintiff's rights as decreed" in this suit; an order directing

Defendant to file a sworn statement as provided in 15 U.S.C. § 1116(a); an order

directing "Defendant to account and turn over to Plaintiff its profits arising from the

---

[1]The undersigned observes Defendant's non-attorney sole shareholder and
President moved the Court to appear on behalf of the corporation.  Mot. Permission to
Appear (Doc. #21).  The Court denied that request because "[i]t is beyond dispute that a
non-attorney may not represent a corporation in federal court."  Lowery v. Hoffman, 188
F.R.D. 651, 653 (M.D. Ala. 1999); see also Nat'l Indep. Theatre Exhibitors, Inc. v. Buena
Vista Distrib. Co., 748 F.2d 602, 609 (11th Cir. 1984) ("[C]orporations must always be
represented by legal counsel.") (concluding the district court properly refused to allow a
corporation's shareholder to represent the corporation *pro se*), cert. denied, 471 U.S. 1056
(1985).

2

conduct complained of herein" and "trebling such award of profits as appropriate;" and reasonable attorney's fees, costs, and disbursements of this action.  Compl. (Doc. #1) at 8-9.  In support of its Motion for Default Judgment, Plaintiff relies on the following facts set forth in its Complaint.

Plaintiff, a Delaware company with its principal place of business in Montgomery, Alabama, is a financial services conglomerate, operating nationwide through a number of wholly owned subsidiaries, divisions, and related companies under the name ALFA.  See Compl. (Doc. #1) at ¶¶ 8, 13, 16.[2]  Plaintiff's business includes, among other things, insurance and reinsurance services, and it holds licenses for those services in a number of states, such as Alabama and Indiana.  Plaintiff also provides, through itself or related companies, equity lines of credit on residential real estate and other mortgage services, commercial leasing services, and realty and building services.  Comp. (Doc. #1) at ¶ 13. Plaintiff has expanded and continues to expand the breadth and scope of its operations into areas such as diversified insurance, banking, mortgage, and securities.  Id. at ¶ 14.

Plaintiff holds several valid federally registered trademarks incorporating the word ALFA, such as ALFA INSURANCE (Registration No. 2671861), ALFA INSURANCE

---

[2]These companies include, among others, Alfa Corporation, Alfa Insurance Corp., Alfa Life Insurance Corp., Alfa Mutual General Insurance Company, Alfa Mutual Insurance Company, Alfa Virginia Mutual Insurance Company, Alfa Mutual Fire Insurance Company, Alfa General Insurance Corp., Alfa Specialty Insurance Corp., Alfa Vision Insurance, Alfa Realty, Inc., Alfa Benefits Corp., Alfa Properties, Inc., Alfa Ventures II, LLC, Alfa Builders, Inc., and Alfa Investors.  Compl. (Doc. #1) at ¶¶ 10, 15.

& design (Registration No. 2088673), and ALFA REALTY & design (Registration No. 2671857). These trademarks are registered in various classes, like insurance and underwriting services. Plaintiff began using its various "ALFA" trademarks before Defendant could claim to have commenced use of the ALFA name. Compl. (Doc. #1) at ¶ 16.

Plaintiff also possesses a number of pending trademark applications on file with the U.S. Patent and Trademark Office. As an example, it holds: CALL ALFA, MY ALFA, ALFA INSURANCE, ALFA COMPANIES, ALFA CORPORATION, and ALFA FINANCIAL. These applications seek registration in a variety of classes, including mortgage and lending services. Compl. (Doc. #1) at ¶ 17.

Since registration of its ALFA trademarks, Plaintiff and its related companies have invested millions of dollars in advertising and promoting its goods and services, generating billions of dollars in sales. Id. at ¶ 18. As a result, the ALFA trademark has become a symbol of consumer goodwill and its value is incalculable. Id.

Defendant is a Indianapolis-based corporation organized under the laws of the State of Indiana. Id. at ¶ 5. Defendant owns and operates the following website: www.alfamtg.com. Id. at ¶¶ 19, 20. The website states Defendant's business offers residential mortgage loans, residential construction loans, and commercial loans on a national basis and is licensed currently in the states of Indiana, Illinois, Minnesota, and Oregon. Id. at ¶ 20; Def.'s Exh. 5 (Doc. #37-2).

In support of its Motion for Default Judgment, Plaintiff contends its Complaint sets forth sufficient allegations to satisfy each Count alleged. Plf's Mem. Supp. Mot. Default Judgment (Doc. #37-1) at 7. Plaintiff asserts the following five Counts in its Complaint: (1) federal trademark infringement, (2) violations of Section 43(a) of the Lanham Act, (3) common law trademark infringement, (4) common law unfair competition, and (5) trademark dilution under Ala. Code § 8-12-17. Based upon the Complaint and the evidentiary record, as well as Plaintiff's arguments and the authorities cited in Plaintiff's brief, the undersigned finds Plaintiff has satisfied the requirements for entry of default judgment on Counts 1, 2, 3, but not Counts 4 or 5. The Court will discuss each count in turn after setting forth the standard for analyzing Plaintiff's motion.

## II.    DISCUSSION

### A.    Legal Standard for Default Judgment

A defendant, who has been properly served, is required to respond to a complaint within twenty days of the date of service, see Fed. R. Civ. P. 12(a), or risk entry of default against it pursuant to Rule 55 of the Federal Rules of Civil Procedure. There are two steps to obtaining judgment by default: the entry of default and the subsequent entry of judgment by default. See Fed. R. Civ. P. 55(a)-(b).

As provided in Rule 55(a), the clerk may enter a party's default with regard to a claim for affirmative relief where the elements of default are shown by an affidavit or other competent proof. See Fed. R. Civ. P. 55(a). In this case, the clerk has entered

default against Defendant, and Plaintiff has moved the Court to enter judgment by default pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  As provided in Rule 55(b)(2), the Court may conduct hearings to enter or effectuate judgment, if it needs to conduct an accounting, to determine the amount of damages, or to establish the truth of any averment by evidence or to make an investigation of any other matter.  Fed. R. Civ. P. 55(b)(2).  Here, the Court finds that "all essential evidence is already of record," S.E.C. v. Smyth, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005), and, therefore, a hearing is not required.

A default judgment may not be entered by the Court solely on the basis of the clerk's entry of default.  Rather, the allegations in the Complaint must present a "sufficient basis" to support the default judgment on the issue of liability.  Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  A sufficient basis exists where the "well pleaded" allegations support the causes of action alleged.  See id.  Allegations which are well pleaded, except those pertaining to the amount of damages, are taken as true, and a defendant cannot later seek to contradict those allegations.  See id.; Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Consequently, in defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact."  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).  Nevertheless, the measure of damages still must be proved.  DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) ("[A] default is not treated as an absolute . .

. of the plaintiff's right to recover.").

### B.    Federal Trademark Infringement

In Count 1 of the Complaint, Plaintiff alleges federal trademark infringement under §32(1) of the Lanham Act. Under this section, liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim, a plaintiff must demonstrate that (1) the defendant used its mark in commerce, (2) without its consent, and (3) defendant's mark is likely to cause consumer confusion or result in mistake. Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242 (11th Cir. 2002); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998).

Plaintiff's Complaint alleges it discussed Defendant's use of Plaintiff's ALFA marks both in writing (through a cease and desist letter) and verbally. Despite these discussions, the Complaint alleges Defendant continued to use Plaintiff's ALFA marks on Defendant's website without Plaintiff's permission. These allegations sufficiently demonstrate Defendant used Plaintiff's ALFA marks in commerce and Plaintiff's express lack of consent to the use. The Complaint also alleges Defendant's website offers commercial, residential, and construction mortgages and loans, and other related services. Excerpts from Defendant's website confirm this information. Plf.'s Exh. 5 (Doc. #37-2).

Plaintiff's Complaint alleges it or its related companies too offer equity lines of credit for residential real estate and other mortgage services, commercial leasing services, realty and building services, as well as banking, mortgage, securities, and a variety of other financial services. These allegations, supported by excerpts from Defendant's website, demonstrate Defendant's use of the ALFA marks is likely to cause consumer confusion or result in mistake. Def.'s Exh. 5 (Doc. #37-2). Therefore, the Court concludes Plaintiff is entitled to default judgment on Count 1 of the Complaint.

###    C.    Violations of Section 43(a) of the Lanham Act

In Count 2 of the Complaint, Plaintiff alleges a claim under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a). To prove a claim for unfair competition under Section 43(a), a plaintiff must show (1) it had prior rights to the mark at issue, and (2) the defendant adopted a mark or name that was the same, or confusingly similar to, plaintiff's mark such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001).

As discussed above, Plaintiff's Complaint alleges it discussed Defendant's use of Plaintiff's ALFA marks both in writing and verbally. Despite these discussions, Plaintiff alleges Defendant continued to use Plaintiff's ALFA marks on Defendant's website without Plaintiff's permission. These allegations also demonstrate Plaintiff had prior rights to the mark at the time Defendant used Plaintiff's ALFA marks in the business name Alfa Mortgage Inc., and Defendant's use of the ALFA marks is confusingly similar

8

to consumers. Therefore, the Court concludes Plaintiff is entitled to default judgment on Count 2.

**D.    Common Law Trademark Infringement**

Count 3 alleges a claim of common law trademark infringement under Alabama law. Alabama courts have long recognized a cause of action for unfair competition through imitation of a competitor's trade name. See Fuqua v. Roberts, 110 So. 2d 886, 887 (1959). To set forth this claim, a plaintiff must demonstrate its "trade is in danger of harm from the use of its name by the '[defendant] in such a manner as it is likely to deceive the public into the belief that the [defendant's] affairs, in the respect complained of, are those of the [plaintiff]." Id. In other words, a central element of a claim of trademark infringement under Alabama common law, just as under the Lanham Act, is the likelihood consumers will be misled by the similarity of the parties' marks.

Because the test for the state-law infringement claim under Alabama common law is same as it is under the Lanham Act, see Arthur Young, Inc. v. Arthur Young & Co., 579 F. Supp. 384, 389 (N.D. Ala. 1983), and because this Court has found Plaintiff has established a likelihood of consumer confusion above, the Court concludes Plaintiff is entitled default judgment on Count 3. See Choice Hotels Int'l, Inc. v. Kaushik, 147 F. Supp. 2d 1242, 1256-57 (M.D. Ala. 2000).

**E.    Common Law Unfair Competition**

Plaintiff also charged Defendant with engaging in unfair competition under

9

Alabama common law in Count 4 of the Complaint. Alabama law does not recognize a common-law tort of unfair competition, but this alone will not defeat a claim that alleges facts sufficient to establish a cause of action under the Alabama tort of interference with business relations. <u>Midlothian Lab., LLC v. Pamlab, LLC</u>, 509 F. Supp. 2d 1065, 1083 (M.D. Ala. 2007) (citing <u>L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.</u>, 813 F.2d 332, 335 (11th Cir. 1987)). To present an actionable tort of intentional interference with business or contractual relations, Plaintiff's Complaint must establish: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of defendant's interference. <u>Gross v. Lowder Realty Better Homes & Gardens</u>, 494 So. 2d 590, 597 (Ala. 1986) (footnotes omitted); <u>see also Soap Co. v. Ecolab, Inc.</u>, 646 So. 2d 1366, 1371 (Ala. 1994). Because the Complaint does not enumerate the specific actions challenged under this count, the undersigned finds default judgment is not appropriate for Count 4.

### F.  Trademark Dilution under Ala. Code § 8-12-17

Count 5 of the Complaint alleges trademark dilution under Ala. Code § 8-12-17. That provision states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this article, or a mark valid at common law, including a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the

parties or the absence of confusion as to the source of goods or services.

Ala. Code § 8-12-17 (1975).  The District Court for the Northern District of Alabama

described "the plaintiff's burden of proof for dilution under § 8-12-17 . . . [a]s essentially

the same as under federal law."  EBSCO Indus., Inc. v. LMN Enterprises, 89 F. Supp. 2d

1248, 1264 (N.D. Ala. 2000).[3]

Under the Federal Trademark Dilution Act (the FTDA), "'[d]ilution' is defined as

'the lessening of the capacity of a famous mark to identify and distinguish goods or

services, regardless of the presence or absence of (1) competition between the owner of

the famous mark and other parties, or (2) likelihood of confusion mistake or deception.'"

Alltel Corp. v. Actel Integrated Commc'n, Inc. 42 F. Supp. 2d 1265, 1273 (S.D. Ala.

1999) (quoting Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1326 (9th Cir. 1998)

(quoting 15 U.S.C. § 1127)).  To succeed on a trademark dilution claim, a plaintiff must

prove "1) its mark is famous; 2) the defendant adopted its mark after the plaintiff's mark

became famous; 3) the defendant's mark diluted the plaintiff's mark; and 4) the

defendant's use is commercial and in commerce."  Carnival Corp. v. Seaescape Casino

_____

[3]As the Eleventh Circuit explained in Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,
889 F.2d 1018 (11th Cir. 1989), an infringement action is based on the likelihood of
consumer confusion between suppliers of competing goods in the same geographic area.
Id. at 1024.  A dilution action, in contrast, is based on the concept that a strong trademark
has value beyond its ability to distinguish a good or service's source.  Id.  A dilution
action protects the owners of such strong, distinctive marks from the diminution of
consumer goodwill by competitors or non-competitors.  Id.  As indicated supra, Plaintiff
here makes both types of claims.

Cruises, Inc., 74 F. Supp. 2d 1261 (S.D. Fla. 1999) (citing Syndicate Sales, Inc. v.

Hampshire Paper Corp., 192 F.3d 633 (7th Cir. 1999); Avery Dennison Corp. v.

Sumpton, 189 F.3d 868 (9th Cir. 1999); Ringling Bros.-Barnum & Bailey Combined

Shows, Inc. v. Utah Div. of Travel Dev., 170 F.3d 449, 452 (4th Cir. 1999), cert. denied,

528 U.S. 923 (1999)); see also 15 U.S.C. § 1125(c).[4]  Under the FTDA, a famous mark

"must have a degree of distinctiveness and strength beyond that needed to serve as a

trademark; it must be 'truly prominent and renowned.'"  HBP, Inc. v. Am. Marine

Holdings, Inc., 290 F. Supp. 2d 1320, 1338 (M.D. Fla. 2003).  The nonexclusive list of

factors a court may consider to determine whether a mark is famous and, therefore,

deserving of protection from dilution, include:  (1) the degree of inherent or acquired

distinctiveness; (2) the duration and extent of use of the mark; (3) the duration and extent

of advertising and publicity; (4) the geographical extent of the area in which the mark is

used; (5) the channels of trade in which the mark is used; (6) the degree of recognition of

the mark in the areas and channels of trade used by the owner and the entity allegedly

diluting the mark; and (7) the nature and extent of use of the same or similar marks by

third parties; and (8) whether the mark is registered on the principal register.  15 U.S.C. §

1125(c)(1).

---

[4]The Court observes the Trademark Dilution Revision Act (the TDRA), which amended the FTDA effective October 6, 2006, also requires a plaintiff to prove that its mark is famous.  Under the TDRA, however, a plaintiff need not show actual dilution. Rather, an owner of a famous mark can prevail on a dilution claim if the owner shows that its mark is famous and demonstrates the likelihood of dilution.  15 U.S.C. § 1125(c)(1) (2006).

"Few marks are ever famous." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 15 F. Supp. 2d 389, 400 (S.D.N.Y. 1998). In examining the Complaint, the Court must infer Plaintiff's allegations. Plaintiff alleges its marks are famous because Plaintiff has registered its marks, engaged in substantial advertising, and conducts business in some form under the ALFA marks nationwide. But, there are no factual allegations regarding the mark's distinctiveness, the duration and extent of the use of the mark,[5] or the degree the ALFA marks' recognition. Based on the absence of these allegations, the Court simply cannot conclude Plaintiff's ALFA marks are famous. Consequently, Plaintiff has failed to set forth sufficient allegations entitling it to default judgment on Count 5.

### G.    Damages

Plaintiff seeks damages, including injunctive relief; an order directing Defendant to deliver to Plaintiff for destruction all items which "bear any designation in violation of Plaintiff's rights as decreed" in this suit; an order directing Defendant to file a sworn statement as provided in 15 U.S.C. § 1116(a); an order directing "Defendant to account and turn over to Plaintiff its profits arising from the conduct complained of herein" and "trebling such award of profits as appropriate;" and attorney's fees and costs.[6] The Court

_____

[5] While the Court acknowledges Plaintiff has sufficiently alleged its ALFA marks existed before Defendant's use, this fact, without more information, does not assist the Court in analyzing Plaintiff's dilution claim.

[6] While Plaintiff requested costs in its motion, it failed to identify the exact costs and the amounts it seeks to recover. Without this information, the undersigned cannot

13

will discuss each request for relief in turn.

To establish entitlement to entry of a permanent injunction, Plaintiff must show: (1) it has prevailed in establishing the right asserted in the Complaint; (2) there is no adequate remedy at law for the violation of the right; and (3) irreparable harm will result if the court does not enter the injunction. Ala. v. United States Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005).

As discussed above, Plaintiff has established Defendant's trademark infringement. By virtue of Defendant's trademark infringement, Plaintiff has also established irreparable harm and no adequate remedy at law, as it is usually recognized in trademark infringement cases that there is no adequate remedy at law to redress infringement, and infringement by its nature causes irreparable harm. Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982 (11th Cir. 1995); GMC v. Phat Cat Carts, Inc., 504 F. Supp. 2d 1278 (M.D. Fla. 2006). Thus, the undersigned finds Plaintiff is entitled to the entry of a permanent injunction.[7] Moreover, it logically follows that Plaintiff is entitled to the various orders specified immediately above.

Finally, Plaintiff is entitled to attorneys' fees incurred in bringing this litigation. The statute provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a). The Eleventh Circuit has defined an

---

award costs. Consequently, the undersigned concludes Plaintiff is not entitled to costs.

[7]Thus, the Court need not analyze whether Plaintiff is entitled to a permanent injunction under Counts 2 and 3.

14

exceptional case as one that can be characterized as malicious, fraudulent, deliberate, and willful.  Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001); Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994). The Complaint establishes Defendant continued to infringe Plaintiff's ALFA marks after receiving both written and verbal notice from Plaintiff.  Defendant's failure to cease use of the marks demonstrates its deliberate and willful conduct.  Consequently, the Court finds an "exceptional" case exists here and concludes an award of attorney's fees is warranted.  Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004) (finding defendant's continued infringement after receiving notice from plaintiff supported the awarding of attorney's fees).

The starting point in any "reasonable fee" determination is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983).  The resulting figure is known as the "lodestar."  Pa. v. Del. Valley Citizens Council II, 483 U.S. 711, 745 (1987) (Delaware II).  The lodestar may thereafter be enhanced or reduced based on the results obtained or the risk of nonpayment.  Delaware II, 483 U.S. at 745; Pa. v. Del. Valley Citizens Council I, 478 U.S. 546 (1986) (Delaware I).  Where the objective sought was in fact obtained, the full lodestar amount should be awarded.  Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).  "If the result was excellent, then the court should compensate for all hours reasonably expended."  Id. at 1302 (citing Popham v. Kennesaw,

820 F.2d 1570, 1578 (11th Cir. 1987)).

In considering whether to adjust the lodestar amount upward or downward, a court may wish to consider any of the twelve factors enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974);[8] Hensley, 461 U.S. at 436. Enhancement of the lodestar, however, should only be made in exceptional cases where need and justification for such enhancement are readily apparent and supported by clear evidence of record. Delaware II, 483 U.S. at 728; see also Norman, 836 F.2d at 1302. A downward adjustment of the lodestar may be required when the party being awarded fees achieved only limited success or spent time on unsuccessful and unrelated claims. Hensley, 461 U.S. at 436. A further downward adjustment may be required for "excessive, redundant, or otherwise unnecessary" hours. Id. at 434.

Plaintiff seeks a total of $36,860.66 in attorney's fees for 93.1 hours of work from four attorneys whose experience, skill, and hourly rate (ranging from $285.00 for the least experienced attorney to $500.00 for the most experienced attorney)[9] each differed. In

---

[8]The 12 factors enumerated in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson, 488 F.2d at 717-19.

[9]The Court notes that the most experienced attorney's hourly rates varied during his representation. Cf. Invoice No. 1446571 (charging $535.00 per hour) with Invoice

particular, Plaintiff seeks fees for (1) Juan Basombio, a partner with approximately 19-

years of experience in trial practice and who billed 26.8 hours at about $500.00 per hour;

(2) Marc Reiner, a partner with about 13-years of experience in intellectual property

litigation and who billed 51.0 hours at $490.00 per hour; (3) Eric Epstein, an associate

with approximately 5-years of experience in trial practice and who billed 4.6 hours at

$370.00 per hour; and (4) Morgan Hilpert, an associate with about one-year of experience

in trial practice and who billed 10.7 hours at $285.00 per hour. These attorneys

performed a variety of services on the case, including, among others, the preparation and

review of the Complaint and other documents filed in the lawsuit; discussions and

correspondence with Plaintiff and local counsel; preparation and filing of a response to

Defendant's motion to dismiss; and preparation and filing of the Motion for Default

Judgment in question. Plf.'s Exh. 4 (Doc. #37-2). While the Court has some concern the

attorneys may have provided redundant and, potentially, excessive services, the Court

declines to critique every time entry, because the overall number of hours expended is

reasonable. Indeed, the Court expected a slightly higher number from Plaintiff's counsel.

The Court, nonetheless, questions the reasonableness of the hourly rates Plaintiff seeks.

    In determining the reasonable hourly rate for the purpose of an attorneys' fees

motion, the burden is on the moving party to establish the prevailing market rate, which is

the rate charged in the community by lawyers of reasonably comparable skill, experience

---

No. 1362302 (charging $500.00 per hour).

and reputation for similar services.  Blum v. Stenson, 465 U.S. 886, 895-96, n. 11 (1984);

NAACP v. City of Evergreen, 812 F.2d 1332, 1338 (11th Cir. 1987); Gaines v.

Dougherty County Bd. Of Educ., 775 F.2d 1565, 1571 (11th Cir. 1985); see also

Simpleville Music v. Mizell, 511 F. Supp. 1158, 1162 (M.D. Ala. 2007) (citations

omitted).  "The decision regarding the appropriate hourly rate may be made either by

analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by

relying upon the court's expertise."  Norman, 836 F.2d at 1303; Avirgan v. Hull, 705 F.

Supp. 1544, 1549 (S.D. Fla. 1989).

    Satisfactory evidence of the market rate, however, requires more than the mere

affidavit of the attorneys performing the work.  Blum, 465 U.S. at 896.  Also insufficient

is testimony that a given fee is reasonable; evidence must be of rates actually billed and

paid.  Hensley, 461 U.S. at 439 n. 15.  This evidence may be adduced from charges of

lawyers under similar circumstances or by opinion evidence.  Norman, 836 F.2d at 1299.

When analyzing the market rates being attested to, the Court may consider any of the

twelve Johnson factors referred to previously.  Delaware I, 478 U.S. at 564-69.  One of

those factors, the hourly rate normally charged by the applicant's counsel, has been

deemed the logical starting place in any rate determination.  Vaughns v. Bd. of Educ., 598

F. Supp. 1262 (D. Md. 1984), aff'd 770 F.2d 1244 (4th Cir. 1985); Zeffiro v. First Pa.

Bank, N.A., 574 F. Supp. 443, 447 (E.D. Pa. 1983), aff'd without opinion, 746 F.2d 1469

(3d Cir. 1984).  See also Fla. Pawnbrokers v. Fort Lauderdale, 711 F. Supp. 1084,

1086-87 (S.D. Fla. 1989).  Also considered probative are the rates billed in similar

lawsuits and the relative skill of the attorneys involved.  Norman, 836 F.2d at 1299.

As mentioned above, Plaintiff seeks hourly rates ranging from $285.00 an hour for

the least experienced attorney to about $500.00 for the most experienced attorney.

Beyond an unsworn declaration from Plaintiff's most experienced attorney stating the

fees were necessary and reasonable, Plaintiff failed to provide the Court with any other

supporting documentation to establish the reasonableness of counsel's fees.  In light of

Plaintiff's failure, the Court may rely on its expertise to determine the reasonableness of

counsel's hourly rates.

The undersigned finds the hourly rates excessive and unreasonable.  While this

Court recognizes Plaintiff appears to have an established relationship with counsel and,

especially, notes the highly specialized training and knowledge required of counsel in

conducting a federal trademark action, the Court cannot ignore the fact that Plaintiff did

not set forth sufficient allegations to succeed on Counts 4 and 5 of the Complaint.

Moreover, it appears counsel's requested rates are based on the markets in which they

practice and not the prevailing market rate, which, in this case, is that of Montgomery,

Alabama.  Simpleville Music, 511 F. Supp. 2d at 1163 (citing Black v. M.G.A. Inc., 51 F.

Supp. 2d 1315, 1320-21 (M.D. Ala. 1999) ("The rate of attorney's fees is that of the place

where the case is filed.'") (quoting Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1494

(11th Cir. 1994)).  In this market, the Court has found the range of $300.00 to $375.00

applicable for attorneys with over 20 years of experience. Simpleville Music, 511 F.

Supp. 2d at 1163. It also has found the applicable range for attorneys with 10 years of

experience at $200.00 to $250.00, and the applicable range for an attorney one to two

years of experience at $160.00 to $185.00. Id.

Applying these ranges here, the Court limits the rates requested to what is

reasonable in Montgomery market. Thus, the Court limits Juan Basombio's rates to

$300.00 per hour; (2) Marc Reiner's rates to $250.00 per hour; (3) Eric Epstein's rates to

$200.00 per hour; and (4) Morgan Hilpert's rates to $160.00 per hour. Under these rates,

the Court finds Plaintiff entitled to $23,422.00 in attorney's fees.

## III.   CONCLUSION

        For the reasons provided above, it is the RECOMMENDATION of the Magistrate

Judge that Plaintiff's "Motion for Entry of Default Judgment" (Doc. #36) be GRANTED

IN PART and DENIED IN PART. It is further

ORDERED that the parties are DIRECTED to file any objections to the said

Recommendation **on or before June 2, 2008**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous,

conclusive or general objections will not be considered by the District Court. The parties

are advised that this Recommendation is not a final order of the court and, therefore, it is

not appealable.

Failure to file written objections to the proposed findings and recommendations in

the Magistrate Judge's report shall bar the party from a *de novo* determination by the

District Court of issues covered in the report and shall bar the party from attacking on

appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice.  <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th

Cir. 1982); <u>see</u> <u>Stein v. Reynolds Sec., Inc.</u>, 667 F.2d 33 (11th Cir. 1982); <u>see also</u> <u>Bonner</u>

<u>v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding

precedent all of the decisions of the former Fifth Circuit handed down prior to the close

of business on September 30, 1981).

      DONE this the 19th day of May, 2008.

                    /s/ Wallace Capel, Jr.
                    WALLACE CAPEL, JR.
                    UNITED STATES MAGISTRATE JUDGE